**David Allen LUKER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–624.**

Court of Criminal Appeals of Oklahoma.

May 26, 1976.

As Amended June 21, 1976.

Charles W. Stubbs, Stubbs, Stiner & Pace, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Leal Intern, for appellee.

## OPINION

BLISS, Judge:

The Appellant, David Allen Luker, hereinafter referred to as defendant, was charged, tried before a jury and convicted of the crime of Robbery with a Dangerous Weapon in the District Court of Oklahoma County, Case No. CRF–75–47. Punishment was assessed at a term of twenty (20) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict pronounced and entered April 18, 1975, the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows, to-wit: Elgin D. Passmore testified that on the morning of January 3, 1975, at approximately 2:30 a. m. he unlocked his front door in response to a knock and two intruders wearing stockings pulled over their heads forced their way into the home, knocking Passmore to the floor with a ball bat. Passmore yelled to his roommate for help but it was too late, the roommate having been found and neutralized by the intruders. The home was then ransacked and a stereo amplifier, tape deck, speakers, other items and the roommate's billfold were stolen. Once the intruders left, in a vehicle which sounded like a truck, Passmore called the police. Later that morning Passmore was asked to identify certain property which the police had found and confiscated. The property was identified as that taken from the home. Passmore could not identify the defendant as one of the intruders because of the disguise and his state of terror.

Glynn Kelly, Passmore's roommate, then testified that on the night in question he heard Passmore screaming for help. Coming to Passmore's aid, he was stopped in the hallway by the defendant and was told to lie down. Kelly stated he recognized the defendant even though he had a stocking over his face and that he also recognized his voice. The witness further identified a billfold as the one taken by the intruders during the robbery.

Oklahoma City Police Officer Dan Brewster then testified that he received a report of the burglary and when he arrived he found the interior of the home completely destroyed and a ball bat in the parlor. After talking to persons across the street, he got a description of the automobile used, a 1961 Ford Falcon. At approximately 3:00 a. m. on the morning in question he received a report that a vehicle with a loud exhaust and fitting the description had been detained and that it had property in the back seat similar to the items stolen. When he reached the detained vehicle he noted that the property matched a list of the stolen items. One of the persons in the detained vehicle was the defendant. He also found gloves and stockings in the vehicle.

Officer David Ford then testified that on the morning in question he received a report concerning a burglary and mentioning a white Ford Falcon. He subsequently spotted and detained a vehicle meeting that description and having a loud exhaust. One of the occupants of the vehicle was the defendant. When he requested the driver's identification, he noticed some property in the back seat. Ford identified State's Exhibits 1–10 as the equipment and other property found in the vehicle and stated that two stockings were found on the floorboard of the car and one was found on the defendant when he was booked into jail. The state then rested.

The defendant, testifying in his own behalf, stated that he was at a club from 9:00 p. m. until 2:00 or 2:30 a. m. when it closed on January 3, 1975. He stated he had gone to the club with his brother-in-law but that the brother-in-law left the club about 1:00 with a man named Quinn in a light-colored Ford Falcon. He further stated that at 2:15 a. m. he went to the club owner's home where his brother-in-law picked him up at approximately 3:00 a. m. On the way home they were stopped by the police.

■ The defendant's first assignment of error urges that there was insufficient evi-

dence to sustain the verdict. We disagree. The defendant was positively identified by Kelly as being one of the intruders. Shortly after the robbery the defendant was found in a Ford Falcon with a bad muffler. The stolen property was found in the vehicle and a stocking was found on the person of the defendant. The vehicle was stopped within thirty to forty-five minutes after the robbery. The evidence of guilt, both direct and circumstantial, is overwhelming. For a similar case see *Mack v. State,* Okl.Cr., 509 P.2d 1372, wherein the identity of the defendant was established by circumstantial evidence. The defendant's first assignment is without merit.

The defendant's last assignment of error urges: "There was fundamental error in that the court violated the provisions of 22 O.S. 935 [sic, 22 O.S.1971, § 982] is not allowing defendant and his attorney to see, view and study the report of presentencing."

Judgment and sentence of twenty (20) years for Robbery with a Dangerous Weapon was pronounced and entered by the court on April 18, 1975, Case No. CRF–75–47, the defendant appearing in person and with his retained counsel. At the same time defendant was before the court, with the same counsel, in three (3) other cases, each Burglary in the Second Degree, numbered CRF–74–4023, CRF–74–4024 and CRF–74–4025. He had been tried in the latter case, 4025, and the jury assessed his punishment at a term of five (5) years imprisonment and judgment and sentence was to be pronounced and entered.

In the two cases, CRF–75–47 and CRF–74–4025 the court had presentencing reports from the Division of Probation and Parole of the Department of Corrections. Motion for New Trial in each case was heard.

Defendant's witnesses were heard in support of his filed applications for suspended sentences, as well as statements and arguments of counsel, during which defendant's counsel stated, "I haven't seen His Honor's pre-investigation report and I understand under the law that we are not entitled to see that and I believe that's the law in some of the other cases and I know it's true in Federal Court." During the hearing, the court detailed, apparently from the presentencing reports, as many as eight encounters the defendant previously had with law authorities, though not convictions. Defendant expressed no exception to the court's observations, nor did he request a copy or inspection of the presentencing reports. The court then overruled each Motion for New Trial; inquired of the defendant and counsel in each case if defendant knew of any legal cause why judgment and sentence should not be pronounced, to which the defendant answered in the negative, as well as so stating in the written Summary of Facts sheet in each case, signed by defendant and his counsel; pronounced and entered Judgment and Sentence in each case, twenty (20) years in CRF–75–47 and four (4) years in CRF–74–4025, being one year less than the verdict, for which reduction we find no authority; the court then refused to order that the two judgments and sentences run concurrently and declined to suspend either in whole or in part, but accepted pleas of guilty in the other two burglary cases, Nos. CRF–74–4023 and CRF–74–4024, defendant specifically waiving the court obtaining presentencing reports, pronounced and entered judgment and sentence of four (4) years in each to run concurrently with that entered in CRF–74–4025.

In support of his last assignment of error, as stated above, the defendant cites two cases, *Deer v. State,* Okl.Cr., 509 P.2d 687 (1973) and *Jiminez v. State,* Okl.Cr., 511 P.2d 1144 (1973). In each of these cases the applicable statute of the State of Oklahoma in reference to presentence reports was 22 O.S.1971, § 982 (Laws 1967, Chapter 277, Section 1, effective May 8, 1967), as follows:

"Presentence investigation.—Upon plea of guilty, or verdict of conviction, in all

felony cases, where the court desires more information, it may make suitable disposition of the custody of the defendant and request the Department of Pardon and Parole or its successor to make a study of the defendant. This study shall include, but not be limited to, the defendant's previous delinquency, his social background, his capabilities, his mental and physical health, and such other factors as may be considered pertinent. Within thirty (30) days from the date this request is made by the court, or within such extended time as the court may allow, the Pardon and Parole Board shall make a written report to the court, a copy of such report to be given to the defendant and District Attorney, which shall be filed with the court clerk, unless otherwise ordered by the court. After receiving such report, the court shall impose such sentence as he deems warranted, which shall run from the date of the plea of guilty, or conviction."

This statute has remained unchanged until its amendment by 22 O.S.Supp.1975, § 982 (Laws 1975, Chapter 369, Section 1, effective June 18, 1975.)

However, effective May 4, 1974, we find the following statute, 57 O.S.Supp.1974, § 519 (Laws 1974, Chapter 155, Section 3):

"Presentence investigation.—Effective January 1, 1975, whenever a person is convicted of a felony, except when the death sentence is imposed, the court shall, before imposing sentence to commit any felon to incarceration by the Department of Corrections, order a presentence investigation to be made by the Division of Probation and Parole of the Department. The Division shall thereupon inquire into the circumstances of the offense, and the criminal record, social history and present condition of the convicted person; and shall make a report of such investigation to the court, including a recommendation as to appropriate sentence, and specifically a recommendation for or against probation. Such reports must be presented to the judge so requesting, within a reasonable time, and upon the failure to so present the same, the judge may proceed with sentencing. Whenever, in the opinion of the court or the Division it is desirable, the investigation shall include a physical and mental examination of the convicted person. *The reports so received shall not be referred to, or be considered, in any appeal proceedings, and such reports shall be confidential with the judge so making the request; except that the portion dealing with the factual aspects of the report may be reviewed by the district attorney or defendant upon proper cause, within the discretion of the judge.*"

This statute remained in effect until its repeal by 22 O.S.Supp.1975, § 982 (Laws 1975, Chapter 369, Section 1, effective June 18, 1975). It is to be remembered that Judgment and Sentence in the instant case was pronounced and entered April 18, 1975, while the 1974 statute, supra, was in force, and its enactment repealed by implication any conflicting provisions of 22 O.S.1971, § 982, supra, and was and is controlling herein.

■■ There is nothing within this statute and record in this case which supports the defendant's assignment of error that the trial court erred "in not allowing the defendant and his attorney to see, view and study the report of pre-sentencing." First, neither requested it but certainly waived it. Second, even upon request, there is nothing mandatory in the statute that the trial court must furnish a copy or permit inspection of the presentencing report. The trial court acted well within its discretion. There is no merit in the assignment of error.

Judgment and Sentence is *AFFIRMED.*

BRETT, Presiding Judge (specially concurring).

I concur with this decision and with that portion reflecting that defendant may have waived any right he might have had to review the presentence report. But notwith-

standing the provisions of that statute, which was later superceded by 22 O.S. 1975, § 982, I believe the provisions of fundamental fairness require that the defendant should be entitled to know what the presentence report reflects about him as this Court provided in *Jones v. State*, Okl. Cr., 477 P.2d 85, 88 (1970).